## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **TEMTEX INDUSTRIES, INC.,** and<br>    Plaintiff, Counter Defendant,<br>**HAROLD ROTMAN,**<br>    Counter Defendant,<br><br>    vs.<br><br>**TPS ASSOCIATES, LLC,** and<br>    Defendant, Counter Plaintiff,<br>**MARTIN BORG,**<br>    Defendant,<br><br>------------------------------------------------------------<br><br>**TPS ASSOCIATES, LLC,**<br>    Third-Party Plaintiff,<br><br>    vs.<br><br>**NUTRANO, INC.,** and **GARY ROTMAN,**<br>    Third-Party Defendants. | No. 09 CV 1379<br><br>Judge Joan H. Lefkow |

**MEMORANDUM OPINION AND ORDER**

Temtex Industries, Inc. ("Temtex") filed an eight count complaint against TPS Associates, LLC ("TPS") alleging that TPS failed to pay Temtex for products it supplied on TPS's behalf. TPS counterclaimed alleging that Temtex failed to pay TPS for services rendered under a consulting agreement and sales consulting agreement (the "agreements"). (#43 Ex. 1 & 2.) TPS also filed a counterclaim against Temtex officer Harold Rotman (#131), who signed a personal guaranty for Temtex. (*See* #43 Ex. 6.) Temtex eventually abandoned its claims against TPS, and this court entered judgment against Temtex on TPS's counterclaim in the amount of $472,286.80. (#88.) TPS now moves for summary judgment against Rotman (#92) on the

theory that, as Temtex's guarantor, Rotman is obligated to satisfy the judgment against Temtex. For the reasons set forth herein, TPS's motion is granted in part and denied in part.[1]

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record to determine whether there is a genuine need for trial. *See* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e). While the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id.* at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use

---

[1] The court has subject matter jurisdiction over the complaint and the counterclaim under 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000 and the parties' citizenship is diverse: Temtex is a Canadian corporation and TPS is a limited liability company whose sole member is a citizen of Illinois; Harold Rotman is a citizen of Canada. Rotman is permissibly joined under Federal Rule of Civil Procedure 20(a)(2) because (1) he is allegedly jointly and severally liable with Temtex and his liability arises out of the same series of transactions or occurrences as that of Temtex; (2) the action presents common questions of fact, namely, the amounts owing to TPS by Temtex; and (3) joining Rotman would not result in prejudice to any party or needless delay; rather, the opposite is true. Federal policy favors joinder and the court has wide discretion when deciding whether joinder of parties is proper. *Hawkins* v. *Groot Indus., Inc.*, 210 F.R.D. 226, 230 (N.D. Ill. 2002). Joinder in this instance promotes judicial economy while protecting the interests of the parties in a just, speedy and inexpensive outcome by allowing this court to determine amounts owing to TPS from Temtex and Rotman as Temtex's guarantor. *See generally First Time Videos, LLC* v. *Does 1-500*, 276 F.R.D. 241, 252–53 (N.D. Ill. 2011); 7 Charles Alan Wright et al., *Federal Practice & Procedure - Civil* § 1653 (3d ed).

the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Material facts are those which might impact the outcome of the lawsuit. *Insolia*, 216 F.3d at 598–99.

## BACKGROUND[2]

Temtex and TPS entered into a consulting agreement on March 15, 2005 (#43 Ex. 1) and a sales consulting agreement on April 19, 2005 (#43 Ex. 2). (*See* #15 ¶¶ 3, 4.). The consulting agreement called for TPS to provide consulting services on an as-needed basis to Temtex at the rate of $200 per hour and required TPS to provide an itemized statement of services performed and expenses incurred. (#43 Ex. 1 ¶ 3.) In addition, the consulting agreement stated that Temtex would pay TPS a commission of two and one-half percent of gross sales for licensing and/or third-party sales programs developed by TPS. (*Id.*) The sales consulting agreement stated that Temtex would pay TPS a fee of five percent of all net sales received by Temtex from products sold in the United States and its territories. (#43 Ex. 2 ¶ 3.) Both agreements allowed for a service charge of one and one-half percent per month on unpaid amounts. (#43 Ex. 1 ¶ 3; Ex. 2 ¶ 3.) On March 25, 2007, Harold Rotman signed a personal guaranty for Temtex where he "personally and unconditionally guarantee[d] to TPS and any of its affiliates the payment of any obligation of [Temtex] and its successors and assigns." (#43 Ex. 6 at 1.) Rotman does not dispute that he signed the guaranty. (*See* #82 ¶ 19.)

---

[2] The following facts are taken from the admissible evidence submitted in this case as discussed *infra*.

On March 4, 2009, Temtex initiated this lawsuit to collect money it claimed it was owed for products it supplied to QVC and Big Lots on TPS's behalf. (#1.) TPS filed an answer denying Temtex's claims (#13) and a counterclaim (#14) alleging that Temtex in fact owed TPS $297,972.61 plus interest under the agreements. TPS filed a third-party complaint against Temtex's president and principal shareholder, Gary Rotman, and his new company, Nutrano, Inc. ("Nutrano"), claiming that Gary failed to pay TPS money owed under two promissory notes (#43 Ex. 4 & 5), and that Gary Rotman and Nutrano wrongfully diverted sales of TPS-developed products from Temtex to Nutrano in violation of the parties' agreements. TPS also filed a counterclaim against Temtex's guarantor, Harold Rotman (*see* #130 & #131), who is Gary's father and a Temtex officer. (#43 Ex. 6; H. Rotman Aff. ¶¶ 4, 6.)[3] Temtex's counsel withdrew from the case in June 24, 2010 (#58), leading the court to dismiss Temtex's complaint with prejudice on August 5, 2010. (#63.) Upon TPS's motion, the court entered default and judgment against Gary in the amount of $369,495.00 plus costs (#77), and entered judgment against Temtex in the amount of $472,286.80, which was the amount due to TPS under the agreements plus interest. (#88.) TPS then moved for summary judgment against Harold Rotman (#92) on the theory that, as Temtex's guarantor, Rotman is obligated to satisfy the judgment against Temtex. This motion is currently before the court.

---

[3] TPS later filed a second third-party complaint against Milano Concepts, LLC that the court dismissed for lack of jurisdiction. (#130.)

**DISCUSSION**

Rotman argues that the court should deny TPS's motion for summary judgment because 1) Rotman, as a guarantor, is allowed to assert Temtex's defenses as a matter of law; and 2) a genuine issue of material fact remains as to the amount owed to TPS under the agreements.

**I.      Compliance with Local Rule 56.1**

As an initial matter, the court is obligated to address the parties' compliance, or lack thereof, with Northern District of Illinois Local Rule 56.1.  Local Rule 56.1(a) requires the party seeking summary judgment to submit, among other things, a statement of material facts, which consists of short, numbered paragraphs and specific references within each paragraph to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph, a description of the parties, and all facts supporting jurisdiction in the court.  L.R. 56.1(a)(3).  The nonmoving party must then submit a concise response to the movant's statement of facts, admitting or denying each fact and supporting each denial with references to the record.  L.R. 56.1(b)(3)(B).  The nonmoving party may submit a statement of additional facts that require the denial of summary judgment.  L.R. 56.1(b)(3)(C).  The moving party may then submit a concise reply to these facts in compliance with the method previously set forth.  L.R. 56.1(a).  Material facts improperly denied by either party are deemed admitted by the court.  L.R. 56.1(a) & (b)(3)(C); *Smith* v. *Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Neither party in this case complied with the requirements of Local Rule 56.1.  TPS, which is represented by counsel, did not submit a separate statement of material facts, and the facts it did submit, which were included in its memorandum in support of its motion for summary judgment (#93), were not supported by specific references to affidavits, parts of the

record, and other supporting materials. Rotman, who is defending himself *pro se*, attempted to comply with Local Rule 56.1(b)(3) by submitting a "concise response" to TPS's memorandum, wherein Rotman responded to each of the facts alleged in TPS's memorandum. (#97.) Rotman did not, however, admit or deny each statement of fact, and his responses did not contain any reference to supporting materials in the record. Included in Rotman's "concise response" was a statement of additional facts that require denial of summary judgment. (*Id*.) With the exception of paragraph 8, Rotman's statement of additional facts is devoid of any reference to the record. In support of paragraph 8, Rotman submitted a notarized affidavit signed under penalty of perjury by Gary Rotman and five supporting exhibits attached thereto. (#98 at 68–88; #98-1.) Rotman also attached other exhibits to his memorandum in opposition to TPS's motion for summary judgment, including an notarized affidavit signed by him under penalty of perjury (#98 at 63–66), but none of these exhibits are referenced in his responses or his statement of additional facts. TPS did not respond to Rotman's statement of additional facts.

The parties have left the court at a disadvantage by failing to set forth the facts in this case with particularity as required by the Local Rule. Nevertheless, because TPS's claim is based on a guarantee that Rotman does not deny signing, *see* #82 ¶ 19, the court is confident that it can resolve the pending motion by resorting to the few pieces of admissible evidence contained in the record, including the guaranty and the affidavits submitted by Gary and Harold Rotman.[4]

---

[4] Federal Rule of Civil Procedure 56 requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Gary and Harold Rotman's affidavits meet this requirement, except for paragraphs 10–13 of Harold's affidavit, which are not made on personal knowledge and are therefore stricken. (#98

II.     **Whether Rotman May Assert Temtex's Defenses as a Matter of Law**[5]

      A.     **Nature of the Guaranty Signed by Rotman**

---

at 64 ¶¶ 10–13.)

      TPS also argues that the court should strike Gary Rotman's affidavit in its entirety because he failed to appear as directed. As a result, the court dismissed Temtex's complaint and entered judgment against Gary in the amount of $369,495.00 plus costs. Without any citation to authority, TPS now urges the court to prohibit Gary from offering evidence in his father's defense. The court declines to do so. Due in part to financial considerations, Gary opted to abandon Temtex's claims and incur judgment against both the company and himself. (*See* #98 at 68–88, G. Rotman Aff. ¶¶ 30–32.) Harold Rotman, on the other hand, appeared and defended himself *pro se* against TPS's claim. To strike Gary's affidavit would be to deprive Harold of a viable defense because Gary is the only individual with knowledge and access to Temtex's financial data. (*Id*. ¶ 2.) Moreover, as discussed in Part II.B., *infra*, it would be inequitable to allow TPS to recover from Harold more than what Temtex owes it. The court declines to strike Gary's affidavit on this basis.

     [5] The parties appear to agree that Illinois law governs the guaranty at issue as neither party has raised a choice of law issue and both briefed the claim using Illinois law. The court similarly assumes that Illinois law applies. *See Lott* v. *Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (holding that plaintiff waived choice of law issue by failing to raise it in response to defendant's motion to dismiss); *Camp* v. *TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (stating that when the parties fail to raise a choice of law issue, a court sitting in diversity applies the substantive law of the state in which it sits); *see also* #43 Ex. 6 at 4 (stating that "[t]his guarantee shall in all respects be interpreted, enforced and governed by the laws of the State of Illinois . . . without regard to the application of principles of conflict of laws").

To enforce a guaranty[6] under Illinois law, "a prima facie case is established 'when the plaintiff enters proof of the original indebtedness, the debtor's default and the guarantee.'" *Cont'l Bank, N.A.* v. *Everett*, 760 F. Supp. 713, 716 (N.D. Ill. 1991) (quoting *Mid-City Indus. Supply Co.* v. *Horwitz*, 476 N.E.2d 1271, 1277, 132 Ill. App. 3d 476, 87 Ill. Dec. 279 (1985)), *aff'd* 964 F.2d 701 (7th Cir. 1992). Here, Rotman admits that he signed the guaranty at issue. (#82 ¶ 19.) Under this contract, Rotman "personally and unconditionally guarante[ed] to TPS . . . the payment of any obligation of [Temtex] . . . includ[ing] all of [Temtex's] liabilities, obligations, debts and indebtedness to TPS, now owing or hereinafter incurred." (#43 Ex. 6 at 1.) Temtex became legally indebted to TPS on May 3, 2011 when the court entered a default

---

[6] Rotman does not dispute that the agreement he signed with TPS was a guaranty and not a suretyship. (*See* #82 ¶ 19.) Although "most treatises have recognized a guaranty as a form of suretyship," the Illinois Supreme Court has noted a legal distinction between the two. *JPMorgan Chase Bank, N.A.* v. *Earth Foods, Inc.*, 939 N.E.2d 487, 493 & 496, 238 Ill. 2d 455, 345 Ill. Dec. 644 (2010). Namely, a "surety is primarily and directly liable on his contract from the beginning, whereas the liability of the guarantor is secondary and is fixed only by the happening of [some] prescribed condition at a time after the contract itself is made." *Id.* at 494 (quoting 28 C.J. §§ 4, 5, at 890–91 (1922)). Moreover, "[a] surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration," whereas "the contract of the guarantor is his own separate undertaking which the principal does not join" and is "entered into before or after that of the principal . . . [and] founded on a separate consideration." *Id.* (quoting G. Brandt, *The Law of Suretyship and Guaranty* § 2, at 9–10 (1905)). Here, the personal guaranty signed by Rotman was immediately due and payable upon the occurrence of any one of three events, including

> 1) Failure to make any payment due hereunder within or before its due date. 2) Upon the filing by the undersigned of an assignment for the benefit of creditors, bankruptcy or other form of insolvency, or by suffering an involuntary petition in bankruptcy or receivership. 3) Upon the death or incapacity of the undersigned.

(#43 Ex. 6 at 1.) The guaranty was a separate contract from the consulting and sales consulting agreements, it was entered into solely by Rotman approximately two years after Temtex executed its agreements, and it was based on consideration separate from that of the consulting and sales consulting agreements. The court is therefore satisfied that the personal guaranty signed by Rotman created an enforceable guaranty and not a suretyship.

judgment against it in the amount of $472,286.80. As such, under the terms of the guaranty, Rotman is liable to TPS for this amount unless he has a valid defense to TPS's claim.

### B. Whether a Guarantor May Assert the Principal's Defenses[7]

As a general rule, a surety or a guarantor "may not plead the principal's independent cause of action as a defense against a creditor." 23 *Williston on Contracts* § 61:14 (4th ed.); *see Graff* v. *Kahn*, 18 Ill. App. 485, 487–88 (1886). The court's reluctance to allow a guarantor to assert a principal's defenses originates with the potential for an inequitable resolution of the parties' rights where, for example, "the principal obligor has a claim that is for an amount in excess of the [guarantor's] obligation . . . [and] the [guarantor] has no incentive to pursue the principal's claims beyond the amount of the [guarantor's] obligation." *Restatement (Third) of Suretyship & Guaranty* § 35 Cmt. on Paragraph (a).

Cases in this circuit, however, have recognized three exceptions to this general rule. *See, e.g., M.S. Distrib. Co.* v. *Web Records, Inc.*, No. 00-C-1436, 2001 WL 685923, at *8–11 (N.D. Ill. June 13, 2001); *Schenley Affiliated Brands Corp.* v. *Mar-Salle, Inc.*, 703 F. Supp. 744, 746 (N.D. Ill. 1989). Judge Schenkier's thoughtful and well-reasoned opinion in *M.S. Distributing Company* is instructive. There the court considered the question of whether a guarantor could assert a setoff claim against a creditor who had obtained a default judgment against the principal debtor. *M.S. Distrib. Co.*, 2001 WL 685923, at *1. After a thorough review of the case law,

---

[7] Rotman's argument that state law recognizes a surety and a guarantor as synonymous is unpersuasive for the reasons discussed in footnote 6. Moreover, his reliance on the appellate court's decision in *JP Morgan Chase Bank* v. *Earth Foods, Inc*., 898 N.E.2d 718, 386 Ill. App. 3d 316, 325 Ill. Dec. 671 (2008), is not helpful, as that opinion was later reversed in relevant part by the Illinois Supreme Court. *See JP Morgan Chase Bank*, 939 N.E.2d at 498 (holding that "the General Assembly did not intend the term 'surety' to include guarantors and, therefore, the protections afforded under this plain language chosen by the legislature in the Sureties Act are not applicable to guarantors").

Judge Schenkier concluded that the Illinois Supreme Court[8] would allow a guarantor to assert the principal's defenses where any of three circumstances were met, including (1) where both the principal and the guarantor are sued together; (2) where the principal consents to the guarantor's use of the defense; or (3) where the principal is insolvent (and not in bankruptcy). *Id.* at *10. In so holding, Judge Schenkier concluded that these generally recognized exceptions were consistent with Illinois case law and supported by sound public policy; namely, insuring that the guarantor is only liable to the creditor to the same extent as the principal debtor. *Id.* at *9.

Each exception aims to balance the competing interests of the parties. As for the first exception, when both the principal and the guarantor are sued in the same lawsuit, the principal may protect its interests if it so chooses by asserting its defenses, thereby limiting the risk that the guarantor will undervalue its defenses, "such as, for example, in a situation where the principal might have a claim worth $1 million, but where the guarantor could not use it as more than a $500,000 setoff." *Id.*; *see also Restatement (Third) of Suretyship & Guaranty* § 35 Cmt. on Paragraphs (b) & (c) ("If the principal obligor is made party to the action . . . the risk of unsatisfactory resolution of the parties' rights disappears."). The same is true for the second exception, where the principal consents to the guarantor's use of its defenses. Finally, as to the third exception, when the principal debtor is insolvent, "a guarantor may be the party with the greatest interest in pursuit of the claim," and if the principal chooses not to assert its defenses, "a guarantor may have no recourse against an insolvent debtor." *Schenley*, 703 F. Supp. at 747. Under these circumstances, "it would be inequitable to deprive the guarantor of what may be a

---

[8] A court sitting in diversity looks to state substantive law to resolve relevant issues and "the court's duty is to apply the state law that would be applied by the Illinois Supreme Court." *Schenley*, 703 F. Supp. at 746.

valid set-off between the creditor and principal debtor." *Id.* at 746–47. Thus, each of "these exceptions fairly accommodate both the interest of ensuring that the claims of the principal are not needlessly squandered . . . and the interest of insuring that the guarantor is not held to a liability beyond that of the principal debtor." *M.S. Distrib. Co.*, 2001 WL 685923, at *9 (citations omitted).

Under the analysis of *M.S. Distributing Company*, one, if not all, of the three exceptions apply in this case. First, both Temtex, the principal debtor, and Rotman, the guarantor, were sued in the same lawsuit. TPS counterclaimed against both parties and these claims were pending simultaneously for six months, giving Temtex an opportunity to assert its defenses if it so chose. (*See* #14 & #131.) Instead, Temtex opted to incur judgment on TPS's counterclaim against it. This evidence supports the inference that Temtex was not interested in asserting its defenses and thus Rotman's use of these defenses will not compromise the company's interests. *See M.S. Distrib. Co.*, 2001 WL 685923, at *10. Although the record is silent as to the second and third exceptions, it appears that they are both likely to apply. Rotman is a Temtex officer and the father of Gary Rotman, Temtex's president. Gary submitted an affidavit in his father's defense, and based on his close relationship with Rotman, would likely consent on behalf of Temtex to Rotman's use of the company's defenses. *See id.* at *11. Finally, Temtex ceased operations in 2007, G. Rotman Aff. ¶¶ 2, 19, and as such, it is unlikely that Rotman would be able to recover against it. Moreover, nothing in the record indicates that Temtex is in bankruptcy, clearing the way for the third exception to apply if Temtex is, in fact, insolvent. Based on the foregoing, the court concludes that Rotman may assert a setoff claim as an affirmative defense to TPS's counterclaim against him.

## II.     Rotman's Setoff Claim

The record indicates that a genuine issue of material fact remains as to the nature and amount of Rotman's setoff claim.  Rotman asserts that (1) TPS breached the consulting agreement by failing to provide a bi-monthly itemized billing statement of services performed and expenses incurred (G. Rotman Aff. ¶¶ 7, 8; Ex. GR-2); (2) under the sales consulting agreement, TPS earned a five percent commission on sales in the covered territory, which breaks down to $112,749.10 or less between 2005 and 2007 (G. Rotman Aff. ¶¶ 12, 13; Ex. GR-3); (3) under the consulting agreement, TPS earned a $200 per hour fee for covered services, and TPS has never provided Temtex with a break down of consulting fees sufficient to allow Temtex to assess the validity of the charges (G. Rotman Aff. ¶¶ 14, 18; Ex. GR-2); (4) Temtex paid TPS most of the money it was due under the agreements, and Temtex only owed TPS $32,897.74 at the time it ceased operations in 2007 (G. Rotman Aff. ¶ 19; Ex. GR-5); and (5) TPS owes Temtex $316,173.20 (less commission fees) for products Temtex delivered to QVC and Big Lots on TPS's behalf (G. Rotman Aff. ¶¶ 21–23, 26; GR-6).  This evidence is unrefuted by TPS and sufficient to create a genuine issue of material fact as to the amount owed by Rotman.

## CONCLUSION AND ORDER

For the foregoing reasons, TPS Associates, LLC's motion for summary judgment (#92) is granted in part and denied in part.  The court finds that Harold Rotman is liable on the guaranty for the judgment entered by this court against Temtex in the amount of $472,286.80.  A genuine issue of material fact exists as to the nature and amount of Rotman's setoff claim.  The case is set for status on August 2, 2012 at 8:30 a.m. for the parties to advise the court of a plan for

disposition of this case. In the meantime, the parties shall make sincere efforts to resolve the dispute without court action and will report on those efforts at the status hearing.

Dated: July 18, 2012

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge